### SAMUEL G. DAMREN

*vs.*

### THE AMERICAN LIGHT AND POWER CO.

## Androscoggin.    Opinion April 22, 1901.

*Judgment.   Res Judicata.   Lease.   Assignment.   R. S., c. 82, § 130.*

The essential elements of the doctrine of res judicata are the identity of the
parties to the suit and the identity of the issue necessarily involved. Hence
to ascertain whether a judgment is a bar in a given case, it is necessary to
inquire whether the matters in controversy were put directly in issue and
determined in the former judgment.

*Held;* that the former judgment between these parties (93 Maine, 334) did not
involve an adjudication upon the merits of the claim now presented, and
hence is not a bar to the maintenance of this action.

Under R. S., c. 82, § 130, an assignee of choses in action, not negotiable, may
sue in his own name to recover the same, but "shall file with his writ the
assignment or a copy thereof." After referring to the failure of the plaintiff
to file the assignment with his writ, in the former action the court said:
"The claim sued in the first count cannot therefore, be recovered in this
action."

After a careful re-examination of the evidence then reported in connection with
the new evidence now presented, it is the opinion of the court that the conclu-
sion then announced was warranted by the evidence and that the additional
testimony will not justify any modification of it. *Held;* that under the terms
of the lease there should accordingly be an abatement of the rent for power
after May 1, 1895; and that the plaintiff recover rent for the six months pre-
ceding, etc.

See *Damren v. Am. L & P. Co.* 91 Maine, 334.

On report.    Judgment for plaintiff.

Action for assumpsit to recover rent under a written lease. The facts will be found reported in 91 Maine, 334.

*H. W. Oakes, J. A. Pulsifer,* and *F. E. Ludden,* for plaintiff.

*J. A. Morrill,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

WHITEHOUSE, J. This is an action of assumpsit in which the plaintiff seeks to recover $1307.50 for rent alleged to be due him for the use of a certain water power and buildings, in Auburn, occupied by the defendant corporation as an electric light station, from November 20, 1894, to August 8, 1895.

May 7th, 1888, Charles Gay being then the owner of the property executed a lease of it to the defendant company, with a stipulation for the payment of rent by the defendant at $200 per annum for the building, and rent for the power to be determined at the rate of $500 for each 50 light dynamo.

Gay was adjudged an insolvent debtor on a petition filed November 20, 1894, and on the 8th day of August, 1895, his assignees conveyed to the plaintiff all his interest in the premises including the lease in question under which the stipulated rent, from the date of his petition in insolvency to the date of the conveyance, remained unpaid. January 17th, 1896, the assignees made an assignment of such rent to the plaintiff.

The specification of the plaintiff's claim in this case shows it to be identical with that set out in the first count of the declaration in the former suit between the same parties, reported in 91 Maine, 334. But, inasmuch as the plaintiff omitted to file with his writ in that case a copy of the assignment of the claim to him, it was held that the claim for $1307.50 sued for in the first count was not recoverable in that action.

In determining the amount due the plaintiff under the second count in the former suit, it became necessary to consider the defendant's claim for an abatement of rent for power from August 8th to November 20, 1895, on account of plaintiff's failure to make

the necessary repairs on the premises after the freshet in April, 1895.

It is provided in the lease that the lessor shall "maintain the dam, sluices, gates, water wheel, shafting, gearing and pulleys in good and efficient repair, saving only for such damages and injury as shall come to the same by reason of the negligence" of the defendant; that there should be a just abatement of rent while the defendant was deprived of the use of the power by reason of injury caused by an accident which could not be avoided by reasonable care and foresight, but not if caused by the defendant's own negligence.

Upon the evidence introduced in that case, the court was not satisfied that the injury to the power on the occasion of the freshet in April, 1895, was caused by the negligence of the defendant and accordingly held that under the express terms of the lease there should be an abatement of the rent for power from August 8th, to November, 20th, 1895. Judgment was, therefore, rendered for the plaintiff upon the second count for rent of the building alone during the three months following the conveyance to the plaintiff.

In the case now before the court the defendant invokes the principle of res judicata, and contends that the judgment in the former suit is a complete bar to the maintenance of this action, and, if not, that with a just abatement of rent according to the terms of the lease, the account will fail to show any balance due the plaintiff.

The essential elements of the doctrine of res judicata are the identity of the parties to the suit and the identity of the issue necessarily involved. Hence, to ascertain whether a judgment is a bar in a given case, it is necessary to inquire whether the matters in controversy were put directly in issue and determined in the former judgment. *Morrison* v. *Clark*, 89 Maine, 103; *Howard* v. *Kimball*, 65 Maine, 308. In *Embden* v. *Lisherness*, 89 Maine, 578, it was held that, in order to make the former judgment conclusive as an estoppel, it must appear to have been rendered upon the merits of the case as well as upon the same subject matter; and as the record in that case failed to disclose upon what issue the judgment was rendered, it was deemed competent to show that fact by parol evidence.

The former case, like the present, was presented to the law court on a report of the evidence and it distinctly appears from the opinion in 91 Maine, 338, that there was no adjudication upon the merits of the claim presented under the first count. After referring to the failure of the plaintiff to file the assignment with his writ, the court said: " The claim sued in the first count cannot, therefore, be recovered in this action."

It is accordingly the opinion of the court that the judgment in the former suit, which did not in fact involve a decision upon the merits of the claim now presented, is not a bar to the maintenance of this action.

Notwithstanding the opinion of the court in the former suit, the plaintiff strenuously insists that upon the evidence now presented, he is entitled to recover the full amount sued for, without any abatement of rent for power on account of the injury resulting from the freshet of April, 1895.

With respect to this claim on the part of the defendant for an abatement of the rent for power, the court said in the former opinion: " In April a freshet is said to have injured the racks and penstock so that the power could not be used, and each party claims that the same were suffered to remain out of repair by the fault of the other. . . . . The defendant did not very much need the active use of the station, and the assignees do not seem to have cared to incur the expense of repair. We cannot say that the premises were injured or suffered to remain out of repair by the fault of the defendant. It seems as if the injury ·was occasioned by a freshet over which the defendant had no control, and the non-repair was suffered to continue by common consent and that meantime, under the terms of the lease, rent for power should abate."

After a careful re-examination of the evidence then reported in connection with the new evidence now presented, it is the opinion of the court that the conclusion then announced was warranted by the evidence and that the additional testimony will not justify any modification of it. Under the terms of the lease there should accordingly be an abatement of the rent for power after May 1, 1895.

It is still insisted, however, that the plaintiff is entitled to recover rent for both building and power, at the rate of $150 per month for the six months from November 20, 1894 to May 1st, 1895, and $50 for rent of the building falling due the first days of June, July and August, 1895.

It has been seen that the lease stipulated for the payment of rent at $200 per annum for the building and $500 for each dynamo of fifty arc lights. But it appears from the testimony that an incandescent machine not then contemplated by the parties was subsequently added, and it was agreed that the rent for that machine should be $600 per annum. For two dynamos of fifty arc lights each, one incandescent machine and the use of the building, the rent would accordingly be $1800 per year, or $150 a month. It is not in controversy between the parties that rent was in fact paid at that rate for a considerable period of time, and that the receipt of February 17th, 1894, for $300 "for rent of power to February 1st," was for two month's rent.

It is contended, in behalf of the plaintiff, that after the agreement fixing the total rent at $150 a month, no different arrangement was ever agreed upon, and that thereafter all payments of rent were made upon that basis.

It is not in dispute that the lessor had possession of the premises during the months of April and May, 1894, for the purpose of repair, and that the rent for both building and power should be abated during that time. Deducting those two months and there remained seven months for which rent was payable between February 1 and Nov. 1, 1894. The payments conceded to have been made by cash and notes on account of rent between those dates amount to precisely $1050 or $150 per month. The receipt of June 2, for $82.50 shows it to have been " borrowed and received," and its appropriation to the payment of rent is disputed. It is earnestly contended that during this period there was only one machine in use for which the defendant was liable to pay rent, and that payments by note and cash were advanced for the accommodation of the lessor. But the lessor's financial embarrassment must have been known to the defendant and it seems improbable

that large overpayments of rent would have been made by the treasurer of the defendant corporation under such circumstances. The defendant had a provable claim against the insolvent estate of the lessor for the loan of $82.50, and other loans, if any, made under like circumstances,

The conclusion is, that the plaintiff is entitled to recover rent for one machine for the six months from Nov. 20, 1894, to May 1, 1895, and rent for the building for nine months including that falling due December 1, 1894, amounting to $400.

But the defendant is entitled to have deducted from this amount the sum of $117.97 expended for the main driving-pulley purchased and affixed to the jack shaft, under an agreement claimed to have been made with the lessor that the defendant should be allowed for it.   It is true, several payments of rent were afterwards made and this sum was not deducted, but the pulley became a part of the equipment necessary to make the power available, and has inured to the benefit of the realty.   It seems just that it should be allowed to the defendant.

*Judgment for the plaintiff for $282.03*
*with interest from March 13th, 1896.*